UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LAWCLICK LLC and PARKER WAICHMAN LLP,

                                   Plaintiffs,

      -against-

JARED REAGAN,

                                   Defendant.
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-cv-1369 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Plaintiffs' LawClick LLC ("LawClick") and Parker Waichman LLP ("Parker Waichman," together with LawClick, "Plaintiffs") Motion for Default Judgment. *See* DE [8]. By way of Complaint filed on March 13, 2020, Plaintiffs commenced this action against Jared Reagan ("Reagan" or "Defendant"), alleging violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, as well as claims for unfair competition and unjust enrichment under New York State law. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. After Defendant failed to appear or otherwise defend this action, the Clerk of the Court entered default against him on April 23, 2020. *See* DE [7]. On April 24, 2020, Plaintiffs filed the instant motion, which Judge Seybert referred to this Court for a recommendation as to whether Plaintiffs' motion should be granted, and if so, to determine the appropriate remedies. *See* Electronic Order dated October 23, 2020. For the reasons set forth

herein, it is respectfully recommended that Plaintiffs' motion be granted and they be awarded injunctive relief as described below.

## I. BACKGROUND

LawClick is a limited liability company formed in Puerto Rico, with its principal place of business in New York, that, together with Parker Waichman, markets Parker Waichman, a New York limited liability partnership operating as a law firm, through the Internet. *See* Compl. ¶¶ 4-5; Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment and Order Granting Permanent Injunctive Relief ("Pl. Memo"), DE [8-1], 1. Reagan is an individual residing in Colorado whom LawClick employed on its marketing staff from December 2019 through February 2020. *See* Compl. ¶¶ 6-9. Throughout his employment, Defendant had access to Plaintiffs' confidential information, including that relating to the development of Plaintiffs' new business venture, for which Plaintiffs planned to use the web domain "drugreport.com." *See* Pl. Memo, 2; April 24, 2020 Affirmation of Jerrold S. Parker ("Parker Aff."), DE [8-2], ¶ 4. Plaintiffs further allege that Reagan created accounts and passwords for "drugreport.com" on Facebook, Instagram and Twitter in the course of his employment. *See* Compl. ¶ 8; Pl. Memo, 2; Parker Aff. ¶ 5.

LawClick terminated Defendant at the end of February 2020, but Plaintiffs allege that Reagan has continued to attempt to breach Plaintiffs' computer systems and gain access to their proprietary information concerning "drugreport.com." *See* Pl. Memo, 2. Specifically, on March 9, 2020, Plaintiffs realized they no longer had

2

access to the administrative functions of the "drugreport.com" website, and that the passwords to the social media sites that Defendant had also created without Plaintiffs' knowledge, using credentials such as "jared@drugreport.com," for Facebook, Instagram and Twitter, rendered the accounts inaccessible to Plaintiffs. *See* Compl. ¶ 10; Pl. Memo, 2.

Jerrold Parker, the sole officer and shareholder of LawClick, asked Reagan to provide him with the usernames and passwords for the website and social media sites, but Defendant refused, claiming ownership. *See* Compl. ¶¶ 11, 13. Although Plaintiffs obtained administrative passwords to move "drugreport.com" to a new web host and deleted all prior usernames and passwords, Reagan caused the web hosting company, WP Engine, to shut down the "drugreport.com" website, once again leaving Plaintiffs without access on March 11, 2020. *See id.* ¶ 14. Ultimately, Parker Waichman proved to WP Engine that Plaintiffs own "drugreport.com," and was able to access the site and reset its passwords. *See id.* ¶ 15; Parker Aff. Exhibit 1. However, Plaintiffs claim, Defendant continues to possess Plaintiffs' confidential data, and therefore remains able to access and compromise Parker Waichman's rights to its proprietary information. *See* Pl. Memo, 3.

Plaintiffs filed their Complaint on March 13, 2020, and on March 17, 2020, served Reagan with the Summons and Complaint. *See* DE [1], [5]. On April 23, 2020, after the time for Defendant to appear or otherwise defend this action passed, Plaintiffs requested a Certificate of Default, *see* DE [6], and the Clerk of the Court entered default against Reagan on that same date. *See* DE [7].

On April 24, 2020, Plaintiffs filed the instant motion, which seeks, among other relief: (i) a default judgment against Defendant; and (ii) a permanent injunction directing Reagan to cease all attempts to violate the security of Plaintiffs' website "drugreport.com." *See* Pl. Memo, 3, 5-6. For the reasons below, the Court recommends granting the motion and imposing a permanent injunction upon Defendant to prevent him from accessing any of Plaintiffs' computer systems, websites and social media accounts.

## II. DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

4

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## III. DISCUSSION

### A. <u>Liability</u>

Plaintiffs bring their claim under Section 1030 of the CFAA. Specifically, Plaintiffs' First Cause of Action alleges that Reagan "is endeavoring to obtain proprietary marketing information as an outsider for his own profit and financial benefit by intentionally accessing a protected computer without approval and, in so doing, has impaired the integrity of plaintiffs' proprietary computer systems, including their data. 18 U.S.C. 1030(a)(2)(C) and (a)(5)(C)." Compl. ¶ 21. Plaintiffs further allege that Defendant's unauthorized access to their protected computer systems "has caused and will continue to cause [them] to suffer injury, with 'damages'

5

and 'losses' as those terms are defined, respectively, in 18 U.S.C. 1030(e)(8) and 1030(e)[(11)]," in excess of $5,000 in the course of their investigations into and assessment of the possible impairments to the integrity of their protected computer systems, as well as their actions to "counteract defendant's theft and conduct[] a damage assessment regarding defendant's unauthorized access." *Id.* ¶¶ 22-23.

The CFAA "is primarily a criminal statute, [but] a civil cause of action is permitted against any such violator, provided that the offense caused 'loss to [one] or more persons during any [one] year period . . . aggregating at least $5,000 in value.'" *Int'l Chauffeured Serv., Inc. v. Fast Operating Corp.*, No. 11 CV 2662, 2012 WL 1279825, at *2 (S.D.N.Y. Apr. 16, 2012) (quoting 18 U.S.C. § 1030(a)(5)(B) and citing 18 U.S.C. § 1030(c)(4)(A)(i)(1) and 18 U.S.C. § 1030(g)); *see also Millennium TGA, Inc. v. Leon*, No. 12-CV-01360 MKB, 2013 WL 5719079, at *7 (E.D.N.Y. Oct. 18, 2013).

The language of the CFAA makes clear that to state a claim under the law, the alleged violation must affect a "protected" computer. *See* 18 U.S.C. § 1030(a)(5)(B). A "protected" computer is defined as one that "is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). Courts have found that computers used to conduct business across state lines qualify as "protected." *See Int'l Chauffeured Serv., Inc.*, 2012 WL 1279825, at *3 (citations omitted); *see also Millennium TGA*, 2013 WL 5719079, at *7. In this case, it is clear that Plaintiffs' computers were used to conduct business across state lines because Defendant is accused of accessing Plaintiffs' systems from Colorado, and Plaintiffs' principal place

6

of business is in New York. *See* Compl. ¶¶ 4-6; Pl. Memo, 2. Accordingly, this Court finds that Plaintiffs' computers qualify as "protected" by the CFAA.

Section 1030(a)(2)(C) makes it unlawful for an individual to "intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[]" information from any protected computer. 18 U.S.C. § 1030(a)(2)(C). Section 1030(a)(5)(C) makes it unlawful for an individual to "intentionally access[] a protected computer without authorization, and as a result of such conduct, cause[] damage and loss." 18 U.S.C. § 1030(a)(5)(C).

The portion of Plaintiffs' computer systems that Defendant accessed was password-protected for LawClick and Parker Waichman employees only, containing "highly sensitive, confidential information belonging to [Plaintiffs], specifically, information relating to plaintiffs' development of ['drugreport.com']." Pl. Memo, 2; *see also* Compl. ¶ 7. Further, after the termination of his employment, Reagan possessed passwords and user identification information for the "drugreport.com" website, as well as for several social media accounts he created for the business venture in the course of his employment though, without Plaintiffs' knowledge, using an email address and passwords unknown to them. *See* Compl. ¶¶ 8, 10. Based on Plaintiffs' allegations, the Court concludes that Defendant's conduct was both intentional and unauthorized, particularly given the accusation that Defendant continued to use Plaintiffs' proprietary login information after his termination, as well as that Reagan created the social media accounts purportedly for Plaintiffs, but using login credentials they were unaware of and did not have access to. *See* Compl.

7

¶¶ 9-14; Pl. Memo, 2-3; *see, e.g., Just Be Inc. v. Brisendine*, No. 3:18-CV-00537-SB, 2019 WL 2274990, at *2-3 (D. Or. May 3, 2019), *report and recommendation adopted*, No. 3:18-CV-00537-SB, 2019 WL 2270592 (D. Or. May 28, 2019) (default judgment appropriate against former intern who maintained access to social media account after his termination). Plaintiffs further allege that Reagan's actions caused Plaintiffs to "have spent well in excess of $5,000" investigating and assessing any damage to their systems, as well as working to regain access to "drugreport.com," and that Reagan deprived them of "the ability to attract and retain clients" as a result of "the quality of their online presence and proprietary information." Compl. ¶¶ 23-24. Accordingly, the Court finds that Plaintiffs sufficiently established Defendant's liability as a matter of law.

### B. Injunctive Relief

Plaintiffs seek to have Defendant permanently enjoined from "continuing efforts to take over plaintiffs' 'drugreport.com' site or otherwise exploit and damage plaintiffs' protected computer systems." Pl. Memo, 5. Injunctive relief is expressly authorized by Section 1030(g), which states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g)

Injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted." *Spa World Corp. v. Lipschik*, No. 09-CV-1711(TCP), 2010 WL 11632681, at *10 (E.D.N.Y. Sept. 9, 2010) (quoting *Medical Soc. of New York v. Toia*,

560 F.2d 535, 538 (2d Cir. 1977) (citation omitted)). "'[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57, 130 S. Ct. 2743, 2756 (2010) (quoting *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006)). The decision to grant injunctive relief is within the discretion of the trial court. *See EBay*, 547 U.S. at 391, 126 S.Ct. at 1839. A combination of these factors supports issuing a permanent injunction barring Reagan from further attempts to internally access or assert ownership over the "drugreport.com" site, related social media accounts, or otherwise exploit and damage Plaintiffs' protected computer systems.

    i.    *Irreparable Injury*

Plaintiffs have suffered irreparable injury and will continue to do so absent injunctive relief. In the months after his termination, Reagan attempted to breach Plaintiffs' computer systems several times, removing their access to their own websites and accounts on at least two occasions. *See* Pl. Memo, 2. Plaintiffs were compelled, in turn, "to expend many hours tracing [Defendant's] illicit activities and reversing his attempts to take control of [their] proprietary website." *See id.* Plaintiffs further allege that Reagan retains the ability to access their computer

systems and accounts, and therefore may cause them to expend further time and resources and suffer possible reputational injury in the event of another breach. *See id.*, 2-3.

### ii. *Inadequacy of Money Damages*

Plaintiffs have established that "remedies available at law, such as monetary damages, are inadequate to compensate" for the harm they have and are likely to continue to suffer regarding their ability to secure and control access to their servers and computer networks, as well as the content posted on their social media accounts. *eBay*, 547 U.S. at 391, 126 S.Ct. at 1839. As Plaintiffs correctly argue, their professional reputation is at risk "if Reagan is not prevented from hijacking 'drugreport.com' and using the [s]ite for his own personal gain." Pl. Memo, 6. Similarly, unauthorized posts on their social media accounts may harm Plaintiffs' reputation to current and potential clients. Accordingly, the Court concludes that monetary damages would be inadequate, as Defendant continues to hold Plaintiffs' proprietary information, and therefore the ability to access their computer systems and accounts.

### iii. *Balance of Hardships*

The Court finds that the balance of hardships also weighs in Plaintiffs' favor. Defendant is unlikely to suffer a cognizable hardship because he accessed systems, and wrongfully asserted ownership over a website and social media accounts, belonging to Plaintiffs after they terminated him. Such systems, website and accounts are not Reagan's to access in the first place. A permanent injunction would

merely require Defendant to restrain himself from accessing information that does not belong to him. On the other hand, Reagan's actions have previously caused Plaintiffs significant harm, which will likely continue absent injunctive relief.

*iv.     Public Interest*

Finally, the public interest supports granting injunctive relief because it will protect Plaintiffs' rightful ownership of property and potentially deter future unauthorized access to Plaintiffs' systems and proprietary information, and may deter other similar actors from engaging in the type of unlawful conduct at issue here.

Accordingly, all four factors weigh in favor of granting injunctive relief.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' motion for default judgment against Reagan be granted, and that Defendant be permanently enjoined from accessing any of Plaintiffs' computer systems, websites and social media accounts.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of it on Defendant via first-class mail and file proof of service by ECF within three days of the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-

3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         January 26, 2021

                                                            /s/ Steven I. Locke
                                                           STEVEN I. LOCKE
                                                           United States Magistrate Judge